## No. 11227

### FIRST NAT'L BANK OF MANNING v. PIERSON

(117 S. E., 542)

1. JURY—JUROR'S INDEBTEDNESS TO BANK DOES NOT DISQUALIFY HIM FOR SERVICE IN CASE IN WHICH BANK IS INTERESTED.—A juror's indebtedness to a bank does not disqualify him for service in a case that the bank is interested in *per se.*

2. APPEAL AND ERROR—JURY—DISMISSAL OF JUROR WITHIN COURT'S DISCRETION; NOT ORDINARILY INTERFERED WITH.—Whether a juror should be excused in a particular case is left to the discretion of the judge, which discretion ordinarily will not be interfered with.

3. EVIDENCE—FORECLOSING MORTGAGE ON "ONE PAIR OF MULES," EVIDENCE ESTABLISHING IDENTIFY NOT AN ATTEMPT TO VARY THE CONTENTS OF THE MORTGAGE.—In an action to foreclose a mortgage on "one pair of mules," wherein plaintiff has alleged right of possession of "one pair of mules," and the Sheriff under claim and delivery has seized "one pair of mules," the plaintiff has a right to show what mules the defendant had at the time the mortgage was taken, and testimony tending to establish the identity of the mules is admissible and competent, and not an attempt to vary the contents of the mortgage.

4. EVIDENCE—CHATTEL MORTGAGE CONTAINING BLANKET PROVISION COVERING FUTURE INDEBTEDNESSES HELD NOT TO BE VARIED BY PAROL EVIDENCE.—The terms of a chattel mortgage on mules which contained a blanket provision making it secure all other debts of the mortgagor to the mortgagee, no matter how arising, then and thereafter owing, *held* not capable of being disputed or destroyed

by parol evidence as to what debts the mortgage was intended to secure.

5. TRIAL—INSTRUCTION THAT CHATTEL MORTGAGE SECURED DEBT INVOLVED HELD NOT CHARGED ON FACTS.—In an action to foreclose a chattel mortgage containing a blanket provision securing future indebtedness, instructions that the mortgage secured the debt involved, though it was not the primary debt intended to be secured, *held* not a violation of the constitutional prohibition of a charge on facts.

6. TRIAL—SUBMISSION OF FORM OF VERDICT PREPARED BY COUNSEL AFTER JURY HAD ANNOUNCED THEIR DECISION HELD NOT ERROR.——In an action to foreclose a chattel mortgage, where the jury had returned and announced that they wanted to render a verdict for plaintiff, *held,* that the Court did not err in delivering to them the form of verdict prepared by plaintiff's counsel, with the instruction, "I will give this to them and see if it is what they mean. Retire again, gentlemen."

Before WILSON, J, Clarendon, Summer Term, 1922. Affirmed.

Action by First National Bank of Manning against R. A. Pierson. Judgment for defendant and plaintiff appeals.

The following is the testimony of the witnesses Thompson and Plowden, referred to in the opinion:

R. E. Thompson, recalled: My place adjoined the place of Mr. Pierson in 1920. He had two mules, one red horse mule and one black mare mule, about 950 or 1,000 pound weight, and about nine or ten years old. They were good mules."

Cross-examination: "I was at his house often. In November he had a mule that belonged to his brother. He had a mule—another mule later. He got the last mule in the fall of the year. He had two mules during plowing season. Q. How about the gathering season? Mr. Thompson, are you in a position to swear that this man (Pierson) didn't have more than two mules in September, 1920? A. Not to my knowledge. Q. That is what I am asking you. A. I can't swear to something I don't know. Q. You can't say he didn't have more than two mules of your own knowl-

edge? A. To my knowledge he didn't have but two. I saw them every day at times, some days two times a day; many a day I didn't see them at all. There was nothing which caused me to pay particular attention to Pierson's mules. I have used the mules. He is supposed to have owned them. Q. He might have had other mules during the latter part of the year? A. I guess it is possible; he might have had a thousand."

Redirect examination: "I said that up until near Christmas I saw no other mules than the ones I described. Along in January of the following year, 1921, I saw Pierson with smaller mules."

Mr. R. Plowden, sworn.

Direct examination: "In 1920 I lived at the old Chandler place, and went back and forth frequently by Mr. R. A. Pierson's place. He had two and only two mules during the year 1920. He had no other mules during that year except those he worked. I passed there frequently, and din't see any. One was a red horse mule and one a black mare mule."

Cross-examination: "I lived about two miles from Mr. Pierson. I have been to his house. I think I went there in 1920. I am willing to say definitely I went there in 1920. He worked only two mules at his place. I didn't go to his place to see what—my observation was only of a casual nature; only on glancing in as I passed. I don't know how many he had in 1920 of my own knowledge. I don't know what he had."

Redirect examination: "I saw only two mules there during 1920. If there had been any other mules I think I could have seen them."

The defendant handed up the following requests to charge, all of which were refused:

(1) I charge you that, if you find that the defendant owned more than one pair of mules at the time he made the chattel mortgage in suit, then the mortgage is void for

insufficiency of description, and the plaintiff cannot recover.

(2)   The burden is on the plaintiff to show by the greater weight of the testimony that the defendant owned only two mules at the time he made the chattel mortgage in suit, and if it fails to do that the verdict must be for the defendant.

(3)   If you find that the chattel mortgage introduced in evidence is void for insufficiency of description, or that the debt secured thereby is paid, then the claim delivery proceedings issued thereon were void, and the seizure of any property of the defendant was a trespass.

(4)   If any property of the defendant was seized under void process, and such process was issued by the plaintiff willfully, or in a reckless or high-handed manner, or with reckless disregard of the defendant's rights, then the plaintiff would be liable for all actual damages sustained by the defendant, and also punitive damages, as you think the circumstances of the case warrant, except that no punitive damages can be given for any act committed after the defendant's reply bond was made.

(5)   A trespass is any interference with the dominion over, or possession of, the property of another without warrant of law.

(6)   Where one commits a trespass against the property of another, the person so suffering such trespass, is entitled to such actual damages as he has sustained by reason thereof, and, in the absence of any proof of actual damage, he is entitled to at least nominal damages.

(7)   That, in order to complete a trespass under void process, there need not be an actual seizure of the property, for a constructive seizure will be sufficient.

The Court charged in part as follows:

Gentlemen, the view I take in this case, I think your duty is very much simplified, and the facts I am going to submit to you are in a very narrow compass.   I charge you this:   That, neither by his answer nor upon the stand.

that I remember, has the defendant Pierson denied the indebtedness represented by the Thompson note. This being either admitted or not denied and can be easily arrived at by calculating the note—I believe counsel has already made this calculation, and you can take that calculation, and verify it, or make a new one, just as you see fit. The defendant denies that the mortgage secured the debt, the $182.75 note, the defendant denied that. Now, notwithstanding that denial, I charge you that it does cover that debt; that it is covered by the provision in the mortgage. So far as the provision in the mortgage is concerned, I charge you that this provision covers that. This provision is what I am speaking of (reading) : "And whereas, I or we desire to secure to said bank the payment of said indebtedness and of any and all other sums of money which I or we may now or hereafter owe unto the said bank (my or our intention being to make this permanent and continuing security for all my or our past, present, and future liabilities and indebtedness of every nature and description in favor of said bank, no matter how the same may arise or may have arisen and no matter whether such liabilities and indebtedness be of all or of any of the undersigned), I or we do hereby convey to said bank the following described property." I say that condition in the mortgage covers—does cover this debt. It is my duty to construe the mortgage, and I hold that that provision covers the $182.75 note. If I am wrong, the Supreme Court will correct me. It is your duty to try the case according to the law as I give it to you. The Judge states the law, and if he is wrong the Supreme Court can correct him. I can't invade your province; you can't invade mine; you take the law as I give it to you.

I further charge you, gentlemen, that, upon default being made of a debt sucured by a valid mortgage, the mortgagee has a legal right, provided by law, to secure the payment; not only sue, but he can, by entering into the proper bond

—he can seize the property, and then defendant can give a bond for the value of the property to secure all costs, etc., to replevy and take the property back. The mortgagee has the legal right to take the legal right provided by law to secure the payment, and, even if the defendant suffered damage, he could collect no damages.

It seems to me that it narrows down mainly to this: What two mules are covered by the mortgage in evidence? You will recall that I admitted testimony to clear up any doubt about the identity of the mules. You have heard the testimony, and the plaintiff must make out its case by the greater weight of the testimony. What is the greater weight? The weight that you the jury will give it. You see the witness on the stand. You are the judges of the reasonableness or unreasonableness of their statements. The greater weight of the testimony does not necessarily mean the greater number of witnesses. You may give more weight to the testimony of one witness than you would to the testimony of a half dozen witnesses. You strive to get at the truth, and, when you get it, hold it, and be governed by it. You have heard the testimony of both sides, and I can only say that the plaintiff must make out its case by the greater weight of the testimony. If the plaintiff has done that, then it is your duty to find for the plaintiff; if not, you should find for the defendant. If the plaintiff has established his right to the mules—if he has shown you what mules are covered by the mortgage; what mules by the greater weight of the evidence—your verdict will be for the plaintiff. If not, your verdict will be for the defendant. If your verdict is for the plaintiff, you should say: "We find for the plaintiff, the mules in dispute." If you render that kind of verdict, you better describe the mules. You have heard the testimony, what kind of mules they were. "In case delivery cannot be made, their value, so many dollars." If you find for the plaintiff, you say: "We find for the plaintiff the mules in dispute, and, in case

delivery cannot be had, then so many dollars in value." You should also render, in addition to that verdict if you find for the plaintiff: "We find that the defendant is indebted to the plaintiff in the sum of so many dollars." If you find for the defendant, you simply say, "We find for the defendant," and sign your name as foreman.

Now, it is a peculiar verdict, and I have often had jurors to have some difficulty in framing a verdict, If there is no objection, they can take this form in the room.

Mr. Tatum: I don't think, your Honor, the form of the verdict should be sent in. I would like for them to find the amount due; there is no doubt as to the amount due under the Thompson note.

The Court: I told them that. Your verdict will be written on this paper called summons—

Mr. Davis: I know how difficult it is. It is even hard for a lawyer to write that verdict.

The Court: The jury can go in there and pass on the facts, and say what your verdict is. If you have any difficulty in writing it out, let us know, and we will try to agree on a form. (Jury retires and returns.)

The Court: What is the finding?

The Foreman: We want to render a verdict for the plaintiff.

Mr. Davis: It seems to me, then, if your Honor please, this is the correct form.

The Court: Mr. Tatum, they say they have found for the plaintiff, and want the form of the verdict, and I will give this to them, and see if that is what they mean. Retire again, gentlemen.

The jury returned the following verdict: "We find for the plaintiff the pair of mules in dispute, to wit: one red horse mule, weighing about 900 pounds, and about 9 years old, and one black mare mule, weighing about 900 pounds, and about 9 years old, or their value of $400 in case delivery cannot be made. We further find that there is due by the

defendant on the within note, to wit: the Thompson note,. the sum of $229.48 this 8th day of July 1922." This was. the form handed up by plaintiff's counsel and submitted to. the jury by the Court.

*Messrs. Tatum & Wood* for appellant. *Jurors indebted to plaintiff should have been excused:* 113 S. C., 508; *Mortgage void for insufficiency of description:* 11 Mont., 451; 57 N. W., 677; 48 A. S. R., 810; 76 Iows., 503; 7 Col., 426; 14 A. S. R., 238; 25 S. E., 793; 34 S. E., 72; 88 Mo. Ap., 292; 4 N. W., 481; 67 N. W., 392 ; 18 S. C., 381; 30 S. C., 326. *No intention evident to waive homestead:* 68 S. E., 579. *Testimony that it was not intention to secure Thompson note improperly excluded:* 11 C. J., 494; 63 S. C., 306; 88 S. C., 355. *Charge on facts:* 81 S. C., 541.

*Mr. W. C. Davis,* for respondent, cites: *Indebtedness to Bank does not disqualify juror:* 1 Civ. Code 1912, Sec. 4045; 116 S. C., 526; 76 S. C., 541. *Parol testimony competent to apply contract to subject matter:* 27 S. C., 324; 111 S. C., 287. *Description if clarified by testimony is sufficient:* 94 S. C., 142; 75 S. C., 229. *Parties presumed to know content of writings:* 3 R. C. L., Sec. 333. *General law applicable to case:* 27 Cyc., 1057, 1059, 1060, 1071, 1072, 1074, 1161; 31 S. C., 262; 88 S. C., 357; 111 S. C., 289; 111 S. C., 516; 113 S. C., 317; 117 S. C., 64; Greenl. Ev., 275. *Not charge on facts:* 72 S. C., 10; 90 S. C., 184; 54 S. C., 174; 47 S. C., 517; 37 S. C., 253; 77 S. C., 53. *Instruction not based on evidence should not be given:* 90 S. C., 414; 91 S. C., 316; 85 S. C., 221. *Law as to charge:* 83 S. C., 530; 90 S. C., 25; 91 S. C., 201.

May 14, 1923.

The opinion of the Court was delivered by Mr. Justice Watts.

"On May 28, 1920, the defendant made to one R. E. Thompson his note for $182.75, payable October 1, 1920.

Thompson at once discounted this note with the plaintiff. The defendant borrowed from the plaintiff $126.17 on September 20, 1920, and executed his note and chattel mortgage to secure this indebtedness payable on September 25, 1920, the mortgage covering 'one pair of mules.' The mortgage signed by the defendant contained a blanket. The provision making it secure all other debts of defendant to plaintiff, no matter how arising, then owing or thereafter owing. When defendant paid the note executed at the time of the execution of the mortgage he demanded his note and mortgage, and the bank stamped his note 'Paid' and delivered it, but refused to deliver the mortgage, claiming that it secured other indebtedness then due to it by the defendant. That dispute originated this action, which is claim and delivery for the mules. The plaintiff gave bond and demanded inmmediate possession. The defendant made reply bond and maintained possession. The defendant answered, denying that the mortgage sucured any other indebtedness than the note for $126.17, and set up a counterclaim for damages for the refusal of the plaintiff to deliver his security upon the same being paid, and for the unlawful seizure of his property. It was not denied that the defendant owed the plaintiff the Thompson note, but it was denied that he knew anything about the bank owing the Thompson note at the time of the execution of the $126.17 note and the chattel mortgage securing it, or at the time of its payment. The cause came on for trial before Judge John S. Wilson and the jury at the summer term, 1922, of the Court of common pleas for Clarendon County, and resulted in a verdict for the plaintiff for the full amount demanded, or for the possession of two mules, described in the verdict. This appeal questions the rulings of his Honor in the trial of the case."

The exceptions are 17 in number; at the hearing exception 7 was abandoned.

Exception 1 is overruled.   A juror's indebtedness to a bank does not disqualify him for service in a case that the bank is interested in *per se*.

The Court is willing at all times to give a litigant a fair and impartial trial before an impartial jury, and, if, upon the examination of a juror under oath, the trial Judge is satisfied that he is not an impartial juror, he can excuse him in the cause.   The excusing must, in the fitness of things, be left in the exercise of the Judge's discretion, and ordinarily that discretion will not be interfered with.

The exceptions raise the question, under the pleadings, testimony, written and oral, and the verdict in the case: Is the chattel mortgage relied on void for want of certainty in the description of the property covered therein?

The mortgage is of "one pair of mules"; the Sheriff, under claim and delivery, seizes "one pair of mules," and the defendant replevies a pair of mules seized by the Sheriff, and the jury found the mules seized by the Sheriff the mules covered by the mortgage.   The plaintiff had the right to show what mules the defendant had at the time the mortgage was taken.   The evidence of Thompson and Plowden was competent, and supplied testimony as to the identity of the mules, and in no way attempted to vary the contents of the mortgage.   It elucidated on this point the mules intended to be covered by the mortgage, and was competent to go to the jury for their determination.   Jones, Chat. Mortg. (2d Ed.), § 53.

These exceptions are overruled.

The exceptions raise the question:   "Does the chattel mortgage, although the debt primarily secured thereby has been paid, cover any other indebtedness owing by the maker to the bank, whether specifically mentioned at the execution of the mortgage or not, and can the recitals be disputed or destroyed by parol?"

These exceptions are overruled under the plain provisions in the mortgage which was the contract between the parties and the recent decision of this Court, in *Lipscomb v. Bank of Tatum,* 117 S. E., —, and the admitted competent testimony as to the mules as clarified by evidence as to the mules described in mortgage and verdict of jury is sufficient.

The exceptions asking for reversible error as a charge on facts are overruled, as we fail to see any such error as complained of, and his Honor in his charge left the matter to the jury for their determination, without violating the Constitution preventing a charge on facts.

The other exceptions are overruled. After the jury found for the plaintiff, his Honor had the right either himself to write out form of verdict, or have some one else write it out, and submit it to the jury, and let them retire and consider it, and determine whether that was what they meant to find. In this case that is what was done, and we see no error.

The refusal by his Honor to charge the request asked for by the defendant does not appear to be prejudicial.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY concurs.

MR. JUSTICE COTHRAN: I concur with Mr. Justice Watts in affirming the judgment below, and wish to add the following in justification of that concurrence, in view of the position taken by Mr. Justice Marion in his forcible dissent. That a chattel mortgage may be given to secure an indebtedness past or future, in addition to that specifically mentioned, is settled by the authorities in this state. *Davis v. Barwick,* 88 S. C., 355; 70 S. E., 1007. *Behrmann v. Brown* (S. C.), 113 S. E., 273. *Lipscomb v. Bank,* 117 S. E., —.

The terms of the mortgage are of as studied comprehensiveness as the English language can supply:

"I * * * desire to secure to said bank the payment of said indebtedness and of any and all other sums of money which I * * * may now or hereinafter owe unto the said bank (my * * * intention being to make this a permanent and continuing security for all my * * * past, present and future liabilities and indebtedness of any nature and description in favor of said bank, no matter how the same may arise or may have arisen * * * )."

While generally speaking it is true that "a mortgage is security only for such demands as are in the contemplation of the parties at the time," I do not see how this principle can be applied to a case where the indebtedness is described with the utmost particularity, without shattering the salutary rule against the admission of parol evidence to alter a written instrument. The matter of "contemplation" is absolutely concluded by the terms of the instrument.

In the case of *Davis v. Barwick*, 88 S. C., 355; 70 S. E., 1007; the mortgage was given in March, 1909. By its terms it secured "any other and further sums of money * * * which may be due and owing * * * at any time during the current year." There was a balance due upon an account of 1908. The mortgagor contended that the mortgage did not secure that balance. The Court held:

"The balance, if any, brought over from 1908, was a sum of money due and owing during the year 1909 and therefore fell under the express terms of the mortgage. The Court is not at liberty to limit the very comprehensive words, 'further sums of money due and owing' during the current year, to the much more restricted meaning of sums of money advanced during the year 1909."

I think that there is as little ground to limit the very comprehensive words in the present mortgage to debts due to the bank of which the mortgagor was informed. It may be remarked in passing that there was evidence tending to show that the note was discounted at the bank with the knowledge and consent of the defendant. If this be true

the case falls directly under *Davis v. Barwick*. The mort-
gagor, however, denied this fact; but, whether true or not,
the debt was clearly covered by the terms of the mortgage,
and, to hold that the mortgagor must have known of the
transfer at the time he gave the mortgage, is to add a con-
dition which does not appear.

The case of *Poulter v. Hardware Co.* (Tex. Civ. App.)
166 S. W., 364; is cited in support of the appellant's con-
tention. An examination of that case will show that the
decision turned mainly upon a statement indicating that its
purpose was to establish a line of credit. Another distinc-
tion is that the judgment sought to be included in the mort-
gage was purchased after the mortgage was given.

This case is distinguished in a later case from the same
Court. *Coleman Bank v. Cathey*, 185 S. W., 661. There
the mortgage also secured "any other liability or liabili-
ties of mine in the hands of the holder." After the exe-
cution of the mortgage the bank became the owner of a note
which was payable to a third person, and claimed the bene-
fit of the security of the mortgage as to it. The Court
said:

"But it is contended that, inasmuch as that note was not
made payable primarily to the bank, but to J. W. Quinn,
it was not intended by the parties that it should be secured
by the mortgage. The language of the mortgage as quoted
above is broad enough to include the claim of the bank up-
on the note in question, and we see no reason why it should
not be given that effect."

The Court then distinguishes the Poulter Case, as above
indicated.

In *Nix v. Hopper*, 18 Ala. App., 240; 90 South., 35; it
is held that a chattel mortgage securing a note "and all such
other sums as I may owe him on account, notes, or other-
wise on and after" the maturity of the note, secured also a
note executed after the maturity of the other note by the

mortgagor to a third person and indorsed by him to the mortgagee.

This Court, in a law case, has no authority to relieve a party from his obligations under the plain terms of a contract valid under the law. The immunity of the debtor, in cases like the present, can be secured only by refraining from entering into such obligations or by legislative action rendering such provisions nonenforceable. There is another side to this question: The bank has some rights as well as the debtor. It may be assumed that the security afforded the past debt was a moving consideration to making the loan. If it was a valid provision the bank has a right to enforce it.

The bank is not seeking an unconscionable advantage over the debtor. All that it wants is the payment of an honest debt which is not disputed. The obligation of the mortgagor to pay all that he owes, secured and unsecured, is not a novel proposition. Even where there is no agreement to that effect, if the mortgagor seeks redemption he muse pay all that is due by him.

Mr. Justice Watts concurs herein.

Mr. Justice Marion (dissenting) : I think the appellant's fourth and sixth exceptions should be sustained.

"It is a well-recognized rule of construction that a mortgage is security only for such demands or indebtedness as are in the contemplation of the parties at the time." 11 C. J., 494; § 157.

While the "blanket clause" of a chattel mortgage is valid (*Behrmann v. Brown* [S. C.] 113 S. E., 273), the very generality and sweeping inclusiveness of its provisions may furnish the best of reasons for defining and making certain the intention of the parties with respect to what debts were actually within their contemplation. If such a clause is to be construed without reference to the situation of the parties and the extraneous facts tending to shed light on

the intention, then such a blanket clause should be condemned for vagueness and uncertainty.

In the case at bar the defendant gave the bank a mortgage to secure a note for $126.17. Unknown to defendant the bank at the time of taking this mortgage, into which was written this blanket clause, had acquired an unsecured note given by defendant to a third party, and, when defendant paid the $126.17 mortgage note, the bank proceeded to foreclose the mortgage for the purpose of applying the proceeds to the payment of the note defendant had given to the third party as an unsecured obligation. A construction of the blanket provision of a chattel mortgage that would permit a mortgagee who holds the mortgage to go out and buy up unsecured claims against the mortgagor, and, after the mortgagor has paid the debt the mortgage was really intended to secure, spring these other claims on him, and enforce the mortgage to secure payment, is to sanction a use of this blanket clause that would make of it an instrument of oppression and fraud. In the case at bar, for example, the bank taking a mortgage on mules worth, say $600 to secure $126 could have gone out and bought unsecured store accounts or fertilizer notes of the defendant to the face value of $600 for perhaps 10c. on the dollar, and, after defendant had paid the $126, sell the mules under the mortgage for $600 to apply on the $600 of old debts that had cost the bank only $60. If the debts that were fairly and reasonably within the contemplation of the parties may not be inquired into and ascertained, it is further apparent that such a mortgage could readily be made a means of fraud on creditors. An insolvent debtor who owes $2,000, and who has given a mortgage on all his property, worth $1,000 to secure a debt of $200, could under the construction adopted by the circuit Judge in the case at bar, select the creditors he wished to prefer and have their accounts assigned to the mortgagee, paid in full under the blanket clause, and let the other creditors get nothing.

How could a subsequent creditor, with constructive notice of this mortgage for $200 into which was written a blanket clause susceptible of the construction here authorized, ever ascertain by the most diligent inquiry what debts would be brought under cover of the mortgage?

"Where a mortgage is conditioned as security, in addition to the principal sum named, 'for all further advances to the mortgagor by the mortgagee, and other indebtedness to the mortgagor by the mortgagee that may exist, arise, or be contracted before the satisfaction hereof,' a subsequent note, indorsed by the mortgagor and by him transferred to the mortgagee, is not secured by the terms of the mortgage. *Moran v. Gardenmeyer,* 82 Cal., 96, 97, 23 P. 6. A chattel mortgage executed by a farmer to a hardware company to secure certain notes and 'for all other amounts I may now be due, or hereafter become due,' as well as for the purpose of securing a line of credit from the mortgagee, does not cover a judgment against the mortgagor in favor of a third person, which judgment the mortgagee purchased. *Poulter v. Weatherford Hardware Co.* (Tex. Civ. A.) 166 S. W., 364."

See 11 C. J., 495, footnote.

For the reasons indicated, I dissent.

MR. JUSTICE FRASER concurs in this dissent.