No. 31,373

EARL NOLAND, *Appellant*, v. UNION STATE BANK OF ARKANSAS CITY, *Appellee*.

(31 P. 2d 45.)

Opinion filed April 7, 1934.

H. O. *Janicke*, J. T. *Boyle*, both of Winfield, and D. W. *Eaton*, of Wichita, for the appellant.

W. L. *Cunningham*, D. *Arthur Walker*, *Fred G. Leach* and *Wm. E. Cunningham*, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: Plaintiff, Earl Noland, was a contractor engaged in building bridges, culverts and the like, and had obtained contracts in Chase county. He issued checks on the Union State Bank of Arkansas City, which were not honored by the bank, but were protested by it. Two parties to whom checks were given caused his arrest on two no-fund checks. He was taken to Chase county, where the checks were paid by his bondsmen, including the costs of the criminal proceedings. Under the law the prosecutions were abated, and he was released. Afterwards, on March 4, 1929, Noland brought an action against the bank, alleging that he secured the contracts, had made an oral agreement with the bank to furnish him money or credit to enable him to get and execute the contracts, and that in this way he had money or credit with which to meet the checks. When the checks were presented they were turned down and protested because of insufficient funds to the credit of plaintiff with which to pay them. The plaintiff filed several petitions and the case was finally tried and disposed of on the third amended petition.

The first petition filed was an individual action alleging that Earl Noland had a contract and had made the oral arrangement about credit at the bank. He alleged that on April 7, 1928, he issued his check to Howard Flowers for $10.80, and that a few days later two checks were issued to the Clement garage in the amount of $165, all of which were dishonored by the bank. When the drawees of the checks filed complaints and caused the arrest of plaintiff, these claims were compromised by the plaintiff through his surety by the payment of the checks and costs as stated, and the prosecutions were abated.

In the first petition, containing two counts, damages were claimed for the arrest and also the mental anguish and humiliation caused by the arrest, and no other injury or loss was stated. A motion was made to strike out of this petition the allegations concerning the arrest caused by others than the bank, that the damages alleged were not the proximate results of any act done for or on behalf of the bank, and were not within its contemplation when payment of the check was refused. The motion, which was in fact a demurrer, was sustained on October 11, 1929, from which no appeal has been taken.

The plaintiff acquiesced in the ruling and filed a first amended petition, which did not rely on the damages for arrest, prosecution, settlement and abatement, but set up plaintiff's individual transactions with the bank, stating the oral agreement that he had for credit for the bridge and culvert work, that he had to his credit in the bank funds to meet the checks; and set up for the first time copies of the checks showing that they were given by the Noland Construction Company, without showing a partnership relation or that the company had a trade name of Earl Noland, or even making the Noland Construction Company a party to the action. This amended petition made no claim for damages for arrest and prosecution. It was in three counts, one on each of the checks issued, and contained a statement of the contract with the bank for credits as before. A demurrer to this petition was filed, which resulted in the filing of the second amended petition on May 15, 1930, more than two years after the checks were issued. In this proceeding the plaintiff alleged that the partnership made the agreement for credit with the bank; that the construction contracts were made by plaintiff, and that plaintiff made the deposits and arranged for the oral security with the bank; that he issued the checks and that they had been dishonored as stated; and these things had been done by him acting for himself and the Noland Construction Company, and that the agreement of the bank was to furnish the money and credit to carry on the contracts for construction work, and that it knew that funds had been provided subject to the checks as issued by the Noland Construction Company.

Two years and five months after the presentation and protest of the checks, the third amended petition was filed in three counts. One on the Flowers check and one on each of the two checks drawn in favor of the Clement garage. Plaintiff alleged as before that he had secured construction contracts, that he was of good character and financial reputation, that in September, 1927, acting for himself and the Noland Construction Company, he had entered into an oral contract with the bank to furnish money and credit for the partnership, a contract which was reiterated several times thereafter; that the construction contract was secured, and in reliance on the contract with the bank a check was issued April 6, 1928, to Flowers, and that two other checks were issued, one on April 7, 1928, and one on April 12, 1928; that there were funds in the bank provided for the Noland Construction Company as stated, and that

the bank refused payment for want of funds and protested the checks.

As a result of this action the plaintiff complains of an arrest of plaintiff on each of the checks, and that by reason of the willful and malicious action of the bank he suffered damages by the causing of his arrest, to the extent of $10,000; loss of time for which he asked $100; fees and expenses, $52; and he therefore asked judgment on each of the propositions for $10,152.

A demurrer to this petition was filed by the bank alleging that the petition showed that plaintiff had no capacity to maintain the action; that there was a misjoinder of causes of action, that the cause of action stated shows upon its face that it was barred by the statute of limitations, and that a cause of action was not stated in favor of plaintiff and against the defendant in the amended petition.

In the argument on defendant's motion for judgment in its favor, there were discussions of the theory on which the action was brought and what was shown in the different pleadings as to the nature and effect of the averments that plaintiff made as to the defendant's arranging for the oral security with the bank for the construction company, that he issued the checks and that they had been dishonored as stated, that he was acting for himself and the Noland Construction Company, and that the agreement of the bank was to furnish it money and credit to carry on the contracts of the construction work, and they had the funds provided to take care of the checks of the Noland Construction Company.

A question was raised whether plaintiff was suing for damages to his credit and reputation in the turning down of the checks, or for the arrest and imprisonment caused by the turning down of the checks. Mr. Moore, counsel for plaintiff, in response to an inquiry stated:

"The plaintiff states that it is his understanding of the theory and gist of his cause of action, that the action is not an action against the defendant for damages for loss of profits because of the turning down of the check, but for damages for the negligent, careless and willful acts of the defendant in turning down his check which should not have been turned down, thereby causing the plaintiff in due course of law and ordinary experience of this world to be arrested and imprisoned, as alleged in the petition."

Mr. Walker, counsel on the other side, inquired:

"You claim, then, that the bank committed a tort?"

To which plaintiff's counsel replied:

"I am suing on, I would say, what a lawyer a hundred years ago would have said, an action on the case. I am suing on a tort."

THE COURT: "No member of the bank filed the complaint."

Counsel for plaintiff replied:

"We might further admit that the bank didn't even know the complaint was going to be filed; the complaint was filed by the Clements Garage."

The court then remarked that probably the demurrer should be overruled, but later, after further discussion of the questions involved and after an answer and reply had been filed, the court on motion of the defendant rendered judgment in favor of the defendant, to which exceptions have been taken.

One of the questions discussed is, Were the causes of action set up in the third amended petition barred by the statute of limitations? In the first petition plaintiff sets up, as we have seen, the negligence and wrong of the bank, and the injury which resulted to plaintiff as an individual. He alleged that he had arranged for a deposit by himself in the bank, that it was sufficient to meet his individual check but that the defendant turned down these individual checks. In the final petition it was alleged that the negligence of the defendant was the turning down of a partnership check of a partnership which had money on deposit sufficient to meet the checks, but they were partnership checks that were turned down and plaintiff was arrested because they were turned down. That would amount to a breach of contract with the partnership and not with that of the individual.

The trial court has held that the first petition did not state a cause of action, but even if it is sufficient it only stated a cause of action for plaintiff, and the final petition upon which plaintiff relies states a breach of the bank's obligation to the partnership in a case brought by an individual and one in which the partnership was still not a party. In the one case plaintiff alleged that he had a fund in the bank, and had drawn checks on it, which had been refused by the bank, while in the other case the fund was in the name of another, and checks had been drawn on that fund and dishonored. The checks, it appears, were issued in April, 1927. The first petition was filed on March 4, 1929, and the third amended petition on May 15, 1930, more than two years after the alleged tort set up as a basis for this action. It is true that the petition was designated as an amendment of the former one. It has been said that:

"It is true, as a general rule, that amended pleadings relate back to the commencement of the action, but this rule never obtains where a separate and distinct cause of action is set up by way of amendment. Even though the amendment might otherwise be allowable, it is generally held that it will not be permitted when the effect will be to make the state of facts pleaded relate back so as to avoid the statute of limitations if the new cause of action would be otherwise barred." (*Kansas City v. Hart,* 60 Kan. 684, 691, 57 Pac. 938. See *Railroad Co. v. Sweet,* 78 Kan. 243, 96 Pac. 657.)

It is shown that the amendment set up a different tort than was first pleaded. It substituted one negligent charge for another and was based on different parties with different grounds of recovery, and where that appears it is open to the defense of the statute of limitations. It has been held that:

"Action by partners for injuries to partnership cattle, not brought within two years of injury, was barred, though, within two-year period, liquidating partner had brought action in his own name, which failed within one year preceding bringing of action, by partners notwithstanding Comp. St. Okla. 1921, sec. 190." (*Midland Oil Co. v. Moore et al.,* 2 F. 2d, 34.)

The first petition set up a contractual relation between Earl Noland, an individual, and the bank, while the third amended petition was based on a contractual relation between a partnership and the bank. The fact that plaintiff was a member of the partnership without adding more. makes a different case and required proof of a different character. In *Hiatt v. Auld,* 11 Kan. 176, where the statute of limitations was applied, a former action had been brought against one Taylor to recover on a transaction relating to the purchase of oxen, a debt which Auld had agreed to pay. In the course of the trial of the case that action was dismissed and on the same day the action was instituted against Auld on the claim. Speaking of the two actions, the court said:

"The first was a sufficient cause of action; the facts necessary to support it are alleged, and Hiatt claims to recover because of the existence of those facts. The second claims to recover the same amount of money, but on the ground of the existence of a wholly different state of facts. The first action was on a contract of a special character between Auld and Taylor; the second on a contract between Auld and Taylor on the one part and Hiatt on the other. The one is not only unlike the other, but inconsistent with it. The first alleges that Taylor bought the cattle and gave the note, Auld becoming subsequently liable. The second makes Auld liable as secret partner from the beginning. The first was a perfect complaint for one cause of action. The second was a cause of action not even suggested by the first." (p. 182.)

Defendant contends that the turning down of the checks of the partnership was not the proximate cause of the arrest and confine-

ment of the plaintiff for which he asked damages. It did not necessarily follow that plaintiff would be arrested because of the dishonor and protest of the checks. The payees of the checks instituted prosecutions and the bank did not. It did not encourage or instigate the prosecutions and did not even know of them until afterwards. There was an interruption and the intervention of another between the refusal to pay and the arrest—an independent human agency acting with an independent human mind. In *Hartford v. All Night and Day Bank*, 170 Cal. 538, the question of proximate cause was raised against the bank, and it was decided that—

"The damages claimed are in no legal sense the proximate result of the act of negligence complained of. It did not necessarily follow that plaintiff would be arrested and charged with a felony because of the bank's act. There was no direct causal connection between the two things. There was an interruption and the intervention of an entirely separate cause, which cause was an independent human agency, acting with an independent mind. We think this proposition to be so plain as not to demand amplification, and that the needs of the case are fully met by reference to *Friend & Terry Lumber Co. v. Miller*, 67 Cal. 464, 8 Pac. 40; *Savings Bank v. Asbury*, 117 Cal. 96, 48 Pac. 1081; *Schwartz v. California Gas Co.*, 163 Cal. 398, 124 Pac. 1045; and *Loftus v. Dehail*, 133 Cal. 214, 65 Pac. 379; 32 Cyc. 745." (p. 541.)

See, also, *Waggoner v. Bank*, 220 Mo. App. 165; *Bank of Commerce v. Goos*, 39 Neb. 437; *Western National Bank v. White*, 62 Tex. Civ. App. 374; *Childs v. Standard Oil Co.*, 149 Minn. 166; *Cherry v. Preston et al.*, 221 S. W. 1100.

Plaintiff cites and relies largely on *Mouse v. Sav. & Trust Co.*, 120 Ohio St. 599. Language is used in that decision which is contrary to the authorities cited. The case is based on an Ohio statute, with provisions differing from our statute, as well as on a different state of facts. The statute provides the refusal of payment "by the drawee shall be *prima facie* evidence of intent to defraud, and knowledge of insufficient funds in, or credit with, such bank or other depository."

There the bank after investigation of the books persisted in stating that the checks were not good, thus stimulating and instigating the charge upon which the arrest of the plaintiff was made, and in that way it was held they caused the arrest. Here there was no such stimulation or instigation alleged by plaintiff, and he even practically said that the bank did not know of any contemplated arrest. It was not responsible for the prosecution and arrest unless the mere refusal of payment makes it responsible.

We think the contrary rule stated in the other authorities is the better law, and even if the dishonor of the checks were treated as a proximate cause, the statute of limitations applies and no recovery can be allowed upon causes of action set up in the third amended petition, which constitute a new state of facts in which judgment is asked on new grounds of recovery and contractual relationship with new parties after the statutory time for the action had expired.

The judgment of the district court for defendant is affirmed.