## 16139

JOHNSON v. NATIONAL BANK OF SOUTH CAROLINA OF SUMTER

(50 S. E. (2d) 177)

Messrs. *Raymon Schwartz* and *L. E. Purdy,* of Sumter, *for Appellant,*

Messrs. *James Hugh McFaddin,* of Manning, *and G. Werber Bryan,* of Sumter, *for Respondent,*

November 3, 1948.

OXNER, Justice.

This action was brought to recover actual and punitive damages for the alleged wrongful dishonor of a check in the sum of $20.00 drawn upon the appellant bank by respondent on July 26, 1947. The bank denied liability. It further alleged that there was no account on its books in the name of respondent; that his mother and he had a joint account which could only be withdrawn by checks signed in the names of both depositors; and that if respondent intended to draw upon the joint account, he was negligent in signing said check in his individual name. During the trial of the case appellant made timely motions for a nonsuit and a directed verdict which were refused, except that the Court held that the evidence was insufficient to warrent the recovery of punitive damages. The jury returned a verdict in the sum of $1,750.00. Upon motion for a new trial, the Court held that the verdict exceeded "what might justly be regarded as a moderate amount," and granted a new trial unless respondent remitted on the record the sum of $500.00. The remission was made and this appeal is from a judgment entered in the sum of $1,250.00.

In 1943 respondent, while in the army, requested his mother to open an account with appellant. At that time he was stationed in California and was about to go overseas. He was to furnish the funds to be deposited but the account

was to be entered in both the name of himself and his mother in order to provide for any emergency. His mother procured from appellant what is termed a signature card upon which she listed the account as "Susan E. Johnson & John E. Johnson," but did not fill out that portion relating to the signatures upon which the bank would be authorized to disburse the money. After signing this card, she sent it to her son in California who added his signature and it was duly delivered to the bank. The account was entered· on the books, however, as "Susan E. Johnson or John E. Johnson" and was similarly listed thereafter by the bank in its monthly statements. It further appears that appellant consistently honored and charged against this account the individual checks of respondent and his mother. Respondent introduced in evidence over two hundred checks, in varying amounts and to various payees and extending over a period of about four years, signed by him individually which the bank promptly paid. A small number of cancelled checks similarly signed by his mother were also offered in evidence. Indeed, the record does not show that any checks were ever drawn against this account in the name of the joint depositors.

Respondent testified that after his discharge in ·1945, he inquired of one of the officers of the bank whether checks signed by him would be honored and was told that they would. This officer testified that while he remembered respondent calling by the bank after returning home, he did not remember making the statement mentioned. He admitted, however, that checks on this account were supposed to be honored when signed by either of the parties.

The check in question was duly presented to the bank and returned unpaid with the statement that respondent had no account. The transaction was handled by a substitute bookkeeper who testified that she refused to pay the check because she was unable to locate any account on the books of the bank in the name of respondent.

We shall first consider whether the Court below erred in refusing appellant's motions for a nonsuit and a directed verdict. The bank contends that the signature card shows a joint account requiring joint action of the depositors in withdrawing the funds or at least that checks issued against the account be signed in the name of both depositors, and that it could not have properly honored a check against this account when signed by either of the depositors individually.

The manner in which funds may be withdrawn from a bank must be determined by the contract between the depositor and the bank. It is true that where there is a joint deposit, unless otherwise agreed upon or fixed by statute, the bank must have the signatures of all joint depositors appended to a check before it is authorized to pay it. 9 C. J. S., Banks and Banking, § 334, page 678; 7 Am. Jur., Banks, Section 509, page 363. But we do not agree that the undisputed testimony in the instant case shows a joint account. We are in accord with the following conclusions reached by the trial Judge: "The signature card introduced in evidence indicated that it was a *joint* account, but the evidence was undisputed that it was never treated as such either by the bank or the depositors, and that on the contrary the account was entered on the books as an *alternative* account, in the names of 'Susan E. Johnson *or* John E. Johnson', and that the checks (excepting the one upon which this suit is brought) drawn by John E. Johnson against the account and signed in his name only were promptly and repeatedly honored by the bank."

We think the nature of this deposit and the manner in which the money was to be withdrawn involved issues of fact which were properly submitted to the jury.

While conceding that ordinarily in an action of this kind it is not necessary for the plaintiff to establish negligence on the part of the bank, counsel for ap-

pellant state in their brief "that in the circumstances of this case there can be no absolute liability in the absence of negligence." Without undertaking to pass upon the correctness of this position, it is sufficient to say that the evidence reasonably supports an inference of negligence. Nor in view of the previous conduct of the bank in repeatedly honoring checks drawn on this account in the individual name of respondent can it be said that he was negligent as a matter of law in signing the check in his individual name.

The next assignment of error relates to the admissibility of the checks heretofore mentioned showing that appellant had previously over a period of years honored the individual checks of respondent and his mother. Objection was made to their introduction upon the ground that such a custom or usage had not been pleaded by respondent. Appellant asserts that the effect of admitting these checks was to permit respondent to prove, without alleging, that the bank had waived its right to require strict compliance with the terms of the contract relating to the manner in which checks against this account should be signed. The Court below held that "the allegations of fact contained in the complaint are amply sufficient to support waiver or estoppel." We think a liberal construction of the complaint fully warrants this conclusion.

These checks were admissible for another reason. Appellant's contention is based upon the assumption that the contract with the bank was for a joint deposit requiring joint action of the depositors in withdrawing the funds. But as previously pointed out, this is not the only reasonable inference warranted by the testimony. The checks were competent to show the interpretation which the parties themselves placed upon the contract. *Reeves et al. v. First National Bank of Oakland*, 20 Cal. App. 508, 129 P. 800. "Where a bank has customarily paid checks signed in a particular way, it cannot change this custom without express notice to the depositor, and refuse to pay checks so

signed." Michie on Banks and Banking, Volume 5, Sec. 234, page 428. Even assuming that the initial agreement contemplated a joint deposit, it was revocable and could be thereafter altered or withdrawn by agreement of the parties.

The next question is whether the Court erred in excusing from service on the case six members of the jury panel upon the ground that they were indebted to the bank. The ruling is challenged upon the theory that the Court erred in holding that this fact amounted to a legal disqualification, but it is clear from the language of the trial Judge in passing upon the motion for a new trial that these prospective jurors were excused in the exercise of his sound judicial discretion. It is well settled that questions of this kind relating to the fitness of jurors to serve in a case are largely left to the discretion of the trial Judge. *Tucker v. Buffalo Cotton Mills,* 76 S. C. 539, 57 S. E. 626, 121 Am. St. Rep. 957; *Yarborough v. Columbia Railway, Gas & Electric Co.,* 100 S. C. 33, 84 S. E. 308; *Crawford v. Charleston-Isle of Palms Traction Co.,* 126 S. C. 447, 120 S. E. 381; *Fender v. New York Life Insurance Co.,* 158 S. C. 331, 155 S. E. 577; *Turner v. Montgomery, Ward & Co. et al.,* 165 S. C. 253, 163 S. E. 796. It is clear that there was no abuse of discretion in the instant case. The suggestion is made that these jurors should have been examined on their *voir dire.* There was no request to that effect, nor was such an examination necessary. The facts upon which the Court concluded that these jurors should be excused were admitted.

In support of its contention that the Court erred in excusing these jurors, appellant principally relies upon *First National Bank of Manning v. Pierson,* 124 S. C. 327, 117 S. E. 542, 544. It is true that the Court there stated that "a juror's indebtedness to a bank does not disqualify him for service in a case that the bank is interested in *per se,*" but it does not follow that the trial Judge may not, in the exercise of his discretion, excuse a juror upon this ground. In

*Wilson v. Palmetto National Bank,* 113 S. C. 508, 101 S. E. 841, 842, in discussing the probable effect of a juror being indebted to one of the parties, the Court observed that "the most reasonable inference was that a debtor might be biased unconsciously in favor of his creditor." Also, see *Williamson v. Pike,* 140 S. C. 376, 138 S. E. 831.

Finally, appellant contends that the amount of the verdict is excessive and unreasonable. The rule is well established in this State that the dishonor of a check by a bank presumptively results in injury to the credit of the drawer. *DeLaunay v. Union National Bank,* 116 S. C. 215, 107 S. E. 925. "And it is not necessary to recovery that there should be proof of special damages, the law presuming that the result is injury to the credit of the depositor from the general experience of men in such transactions." *Lorick v. Palmetto Bank & Trust Co.,* 74 S. C. 185, 54 S. E. 206, 207, 7 Ann. Cas. 818. But the recovery should be "temporate" or "moderate" in amount. *Wilson v. Palmetto National Bank, supra.* In the instant case there is not only the presumption of damage to respondent's credit but there was direct evidence to that effect. We cannot say that the trial Judge abused his discretionary power in permitting a verdict of $1,250.00 to stand.

Judgment affirmed.

BAKER, C.J., and FISHBURNE, STUKES, and TAYLOR, JJ., concur.