[L. A. No. 27112. In Bank. Apr. 18, 1963.]

REBA WEAVER, Plaintiff and Appellant, v. BANK OF
 AMERICA NATIONAL TRUST AND SAVINGS
 ASSOCIATION, Defendant and Respondent.

Louis J. Renga and Gerald B. Parent for Plaintiff and Appellant.

Samuel B. Stewart, Robert H. Fabian, and George L. Beckwith for Defendant and Respondent.

TOBRINER, J.—This case concerns the liability of a bank whose wrongful dishonor of plaintiff's check resulted in plaintiff's arrest and temporary detention on a charge of petty theft. For the reasons which we shall subsequently set forth we have concluded: (1) that although the payee's complaint to the police constituted the immediate cause of the arrest, a sufficient causal connection remains between the arrest and the bank's dishonor of plaintiff's check to afford plaintiff a cause of action against the bank; (2) that damage to plaintiff's reputation and impairment of her health incident to plaintiff's arrest constitute "actual damage" within the meaning of Civil Code section 3320.[1]

---

[1]Section 3320 reads: "No bank shall be liable to a depositor because of the nonpayment through mistake or error, and without malice, of a

Plaintiff's complaint alleges that she maintained a checking account with defendant bank, which "agreed at all times to pay out the amount . . . deposited by plaintiff, in accordance with checks drawn by plaintiff on said Defendant Bank when duly presented." Plaintiff drew a check for $32.68 to the order of J & E Tire Shop. Although plaintiff had on deposit a sum sufficient to cover the check, defendant "wrongfully refused to pay" the check and "marked upon the face of the check . . . the letters 'account closed', thereby indicating that plaintiff had no account in the bank." J & E Tire Shop, "upon receipt of said check marked 'account closed', and in reliance upon and as a proximate result of said markings," swore out a warrant for plaintiff's arrest. Thereafter plaintiff was arrested, charged with petty theft, and temporarily confined.

Plaintiff further alleges that the bank and its employees "knew or should have known that the issuance of a check upon a bank when the maker thereof has no account is a public offense which notoriously and frequently results in the arrest and imprisonment of the maker," and "that notwithstanding said knowledge . . . Defendant Bank wrongfully, negligently and wilfully refused to honor said check." The complaint concludes "that as a direct and proximate result of Defendant Bank's wrongful and negligent dishonor of said check, plaintiff's reputation was damaged, her health impaired, and plaintiff was arrested and imprisoned causing injury to plaintiff in the sum of $50,000."

Defendant demurred on the ground that the complaint failed to state facts sufficient to constitute a cause of action. The court sustained the demurrer without leave to amend and accordingly entered judgment for defendant. Plaintiff appeals from the judgment.

Turning to the first issue, that of proximate causation, we summarize the positions of the parties on that subject. While defendant recognizes that a wrongful dishonor generally gives the depositor a cause of action against the bank, it contends that plaintiff seeks damages only for injuries incident to an arrest which the bank did not proximately cause. To support this contention it relies on *Hartford* v.

---

check which should have been paid unless the depositor shall allege and prove actual damage by reason of such nonpayment and in such event the liability shall not exceed the amount of damage so proved."

*All Night & Day Bank* (1915) 170 Cal. 538 [150 P. 356, L.R.A. 1916A 1220], and *Bearden* v. *Bank of Italy* (1922) 57 Cal.App. 377 [207 P. 270].[2] Plaintiff, on the other hand, would distinguish *Hartford* and *Bearden* on the ground that those cases sounded in contract while her complaint lies in tort. We do not believe that *Hartford* and *Bearden* can be satisfactorily distinguished on plaintiff's basis; those cases, however, were apparently decided upon a theory of proximate causation which has since been repudiated by this court. Thus, as we shall point out, *Hartford* and *Bearden* should be overruled on the issue of proximate causation; plaintiff's complaint should be held to state a cause of action.

 The complaint, we believe, states a cause of action in both tort and contract. As *Allen* v. *Bank of America* (1943) 58 Cal.App.2d 124 [136 P.2d 345], sets forth: " [W]henever the bank fails to discharge its agreement by dishonoring a duly presented check, a right of action then accrues. . . . [W]hile in a sense the injury arises from contract it is nevertheless viewed in another sense, independent of contract, and sounds in tort." (P. 127.) The weight of authority supports that proposition.[3] Although a few courts have restricted the plaintiff to a single form of action, they are almost equally

---

[2]*Hartford* resembles the present case except that plaintiff in *Hartford* maintained only a savings account. After holding that a bank had no duty to pay checks out of a savings account, the *Hartford* court added that "nevertheless, for two quite independent reasons this judgment may not be sustained." (170 Cal. at p. 540.) These reasons were: (1) damages were limited by Civil Code section 3302, which provides that " [t]he detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon"; (2) the act of the payee in causing the plaintiff's arrest was an "intervention of an entirely separate cause, which cause was an independent human agency acting with an independent mind," (p. 541) and thus the dishonor did not proximately cause the arrest. *Bearden* involved a checking account, not a savings account, but the court refused to distinguish *Hartford* and denied recovery on the basis of lack of proximate cause.

[3]See *Siminoff* v. *Jas. H. Goodman & Co. Bank* (1912) 18 Cal.App. 5, 18 [21 P. 939]; *Abramowitz* v. *Bank of America* (1955) 131 Cal.App.2d Supp. 892, 895 [281 P.2d 380]; *Macrum* v. *Security Trust & Savings Co.* (1930) 221 Ala. 419 [129 So. 74, 76]; *First Nat. Bank* v. *Stewart* (1920) 204 Ala. 199 [85 So. 529, 531, 13 A.L.R. 302]; *Britton Mfg. Co.* v. *Connecticut Bank & Trust Co.* (1956) 20 Conn. Super. 113 [125 A.2d 315]; *Woody* v. *National Bank of Rocky Mount* (1927) 194 N.C. 549 [140 S.E. 150, 152, 58 A.L.R. 725]; *Stone Fort Nat. Bank of Nacogdoches* v. *Forbess* (Tex. Civ. App. 1931) 41 S.W.2d 695, 697; 5A Michie, Banks & Banking (Perm. ed., revd. 1950) 560; 6 Zollmann, Banks & Banking 84; 19 Cal. L. Rev. 96 (1930); 3 Cal. L. Rev. 487 (1915).

divided between tort[4] and contract,[5] and in none does it appear that the plaintiff urged the alternative form of action.

In the present case, plaintiff has clearly alleged a contract, its breach, and the negligent or wilfully tortious nature of the breach; plaintiff thus has stated a cause of action in both contract and tort.[6] (See *Siminoff* v. *Jas. H. Goodman & Co. Bank, supra.*) ▉ Having undertaken no action which could prejudice defendant, plaintiff need not elect her remedy but may go to the trier of fact upon both theories. (*Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 336 [5 Cal. Rptr. 686, 353 P.2d 294]; see Dresser, *Procedural Control of Damages by Election of Remedies,* 12 Hastings L.J. 171, 179-182 (1960).)

▉ Although we have thus concluded that the complaint encompasses a cause of action in tort, we cannot hold that *Hartford* and *Bearden* may be distinguished on the suggested theory that those cases sounded only in contract. The complaint in *Hartford* charged negligence; the complaint in *Bearden,* that defendant ''negligently, willfully and maliciously refused to honor said check.'' (57 Cal.App. at p. 378.) Insofar as the opinions in those cases indicate, the depositors stated causes of action in tort as well as contract. Although *Hartford's* dependence upon section 3302 may imply that the action there sounded in contract (see *Abramowitz* v. *Bank of America, supra* (1953) 131 Cal.App.Supp. 892, 897, it could be

[4]*Reeves* v. *First Nat. Bank* (1912) 20 Cal.App. 508, 512-513 [129 P. 800]; *Collins* v. *City Nat. Bank & Trust Co.* (1944) 131 Conn. 167 [38 A.2d 582, 153 A.L.R. 1030]; *Svendsen* v. *State Bank* (1896) 64 Minn. 40 [65 N.W. 1086, 31 L.R.A. 552, 58 Am.St.Rep. 522]; *Nealis* v. *Industrial Bank of Commerce* (Sup. Ct. N.Y. City, N.Y. (1951)) 200 Misc. 406 [107 N.Y.S.2d 264].

[5]*Smiths' Cash Store* v. *First Nat. Bank of San Francisco* (1906) 149 Cal. 32 [34 P. 663, 5 L.R.A. N.S. 870]; *First Nat. Bank of Mobile* v. *Ducros* (1936) 27 Ala. App. 193 [168 So. 704]; *Thomas* v. *American Trust Co.* (1935) 208 N.C. 653 [182 S.E. 136].

[6]Defendant contends that the placement of section 3320 in the Civil Code article entitled ''Damages for Breach of Contract'' implies a legislative purpose to treat all actions for dishonor of a check as solely contract actions. Although we recognize that ''chapter and section headings in the codes are entitled to considerable weight in interpreting the various sections'' (*Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260, 263 [44 P.2d 320]), we note that, at the time section 3320 was enacted, the right of the depositor to sue in tort was well established at common law (see authorities cited supra) and recognized in California (*Siminoff* v. *Jas. H. Goodman & Co. Bank, supra*; *Reeves* v. *First Nat. Bank, supra*). In view of this circumstance, any legislative intent to abolish the right would necessarily have had to be manifest; legislative action so equivocal, and so often devoid of significant meaning, as the mere placement of an enactment in a particular portion of the code is not sufficient.

argued as convincingly that *Hartford's* discussion of negligence, proximate cause, and intervening cause implies that the court considered the action in tort.

While *Hartford* and *Bearden* cannot be distinguished upon the above-proffered grounds, those cases attempt to uphold a proposition which, we believe, no longer enlists support. They hold that the act of the payee of the check in procuring the depositor's arrest constitutes a superseding cause which severs the chain of causation. Whether we treat the action as one of tort or contract, however, we have concluded that the bank's dishonor of the check serves as a proximate cause of the arrest.

Considering the complaint first as setting out an action in tort, we recognize that the *Hartford* and *Bearden* rule of proximate cause commands considerable support in older cases.[7] The rule, however, was rejected by the Supreme Courts of North Carolina (*Woody* v. *National Bank of Rocky Mount* (1927) 194 N.C. 549 [140 S.E. 150, 58 A.L.R. 725]) and Ohio (*Mouse* v. *Central Savings & Trust Co.* (1929) 120 Ohio St. 599 [167 N.E. 868]). In the most recent decision upon the issue the highest court of Connecticut specifically declined to follow *Hartford* on proximate cause. (*Collins* v. *City Nat. Bank & Trust Co.* (1944) 131 Conn. 167 [38 A.2d 582, 584, 153 A.L.R. 1030].)[8]

Not only do these cases sustain the conclusion that the negligence of the bank operated as the proximate cause

---

[7]See *Noland* v. *Union State Bank* (1934) 139 Kan. 261 [31 P.2d 45]; *Parrott* v. *Bell Nat. Bank* (1915) 165 Ky. 802 [178 S.W. 1069]; *Western Nat. Bank* v. *White* (1910) 62 Tex. Civ. App. 374 [131 S.W. 828]; *Waggoner* v. *Bank of Bernie* (1926) 320 Mo. App. 165 [281 S.W. 130]; *Bank of Commerce* v. *Goos* (1894) 39 Neb. 437 [58 N.W. 84, 23 L.R.A. 190]; see also *Robbins* v. *Bankers Trust Co.* (Sup. Ct. Bronx Cty. N.Y. 1956) 4 Misc. 2d 347 [157 N.Y.S. 2d 56] [dictum].

[8]Writers have been virtually unanimous in opposition to the *Hartford* rule. See e.g., 1 Witkin, Summary of California Law, Negotiable Instruments, section 71 (7th ed. 1960); Prosser, *Proximate Cause in California*, 38 Cal. L. Rev. 369, 411 n. 206 (1950); 19 Cal. L. Rev. 96 (1930); 11 Cal. L. Rev. 33 (1922); 3 Cal. L. Rev. 487 (1915). The Uniform Commercial Code specifically provides in section 4-402 that: ''A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. . . . If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.'' The comment to this section states that the last sentence ''rejects decisions holding that as a matter of law the dishonor of a check is not the 'proximate cause' of the arrest and prosecution of the customer, and leaves to determination in each case as a question of fact whether the dishonor is or may be the 'proximate cause.' ''

of the damage but that conclusion finds support in the doctrine of recent cases that the intervening act of a third party will not terminate the defendant's liability for negligence if that act were reasonably foreseeable. (See e.g., *Richardson* v. *Ham* (1955) 44 Cal.2d 772 [285 P.2d 269]; *Warner* v. *Santa Catalina Island Co.* (1955) 44 Cal.2d 310, 319 [282 P.2d 12]; *Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 218 [157 P.2d 372, 158 A.L.R. 872]; *id.* at p. 222 [concurring opinion of Traynor, J.]; Restatement, Torts, §§ 447-449.)

We cannot hold as a matter of law that the intervening arrest here was so remote a possibility that the bank could not reasonably have foreseen it. The foreseeability of the risk generally frames a question for the trier of fact (see *Hilyar* v. *Union Ice Co.* (1955) 45 Cal.2d 30, 37-38 [286 P.2d 21], and cases there cited; Prosser, Torts pp. 373-375; compare *Mosley* v. *Arden Farms Co.*, *supra,* at pp. 218-219 with *id.* at p. 223 [concurring opinion of Traynor, J.]). Indeed, as to this factual issue we note the opinion of the Ohio Supreme Court that "by the exercise of reasonable diligence, the bank could have foreseen that this exact consequence would occur, for the issuance of a check upon a bank without funds or credit to meet it is a public offense which, notoriously, frequently results in the arrest and imprisonment of the drawer of the check." (*Mouse* v. *Central Savings & Trust Co.* (1929) 120 Ohio St. 599 [167 N.E. 868, 870].)

If we consider the case from the viewpoint of a contract action, we reach the same conclusion. While the causal extent of damages may be more limited than in tort (see *Hunt Bros. Co.* v. *San Lorenzo Water Co.* (1906) 150 Cal. 51, 56-57 [87 P. 1093, 7 L.R.A. N.S. 913]; *Abramowitz* v. *Bank of America, supra,* at p. 896; compare Civ. Code, § 3300 with Civ. Code, § 3333), nevertheless, damages actually contemplated, or within the reasonable contemplation of the parties, are recoverable. Such contemplation of the parties does not ordinarily compose an issue which can be resolved on demurrer. (See e.g., *Arvin-Kern Co.* v. *B.J. Service, Inc.* (1960) 178 Cal.App.2d 783, 790 [3 Cal.Rptr. 238]; *Csordas* v. *United Slate Tile etc. Roofers* (1960) 177 Cal.App.2d 184 [2 Cal.Rptr. 133]; *Ely* v. *Bottini* (1960) 179 Cal.App.2d 287, 294 [3 Cal.Rptr. 756].) The risk of the arrest of the depositor does not depend upon any special circumstances unknown to the bank; it is not so remote a contingency that this court could hold as a matter of law that it would have

been unreasonable for the parties to consider it. As stated by Prosser (Proximate Cause in California, *supra*) : ''Arrest under a bad check law appears to be an obvious risk against which the bank has undertaken to protect the depositor.''

We therefore hold that, whether plaintiff's complaint be conceived as sounding in tort or contract, plaintiff has alleged a breach of duty and consequential damages which are sufficiently causally connected to state a cause of action. To the extent that they are inconsistent with this conclusion, *Hartford* v. *All Night & Day Bank* (1915) 170 Cal. 538 [150 P. 356, L.R.A. 1916A. 1220] and *Bearden* v. *Bank of Italy* (1922) 57 Cal.App. 377 [207 P. 270], are overruled.

■ We turn now to the second phase of this case: the question of the interpretation of Civil Code section 3320. (See fn. 1.) Upon consideration of the purpose of that section, and of the cases interpreting similar statutes in other states, we have concluded that the damages alleged by plaintiff constitute ''actual damage'' within the meaning of that section.[9]

We begin with a brief historical review of section 3320. The preexisting rule at common law had provided that ''[I]n the absence of statute, a bank is liable for substantial damages to a merchant or trader whose check it has wrongfully dishonored, even though no actual damages are proved. A merchant or trader is conclusively presumed to have sustained substantial damages because the dishonor of his check creates an immediate injury to his credit which is usually the foundation of his business. If the depositor . . . is not a merchant or trader, the majority of the courts hold that he can recover only such damages for the wrongful dishonor as he alleges and proves.''[10] (1 Paton's Digest, § 21 at p. 1112; see also

---

[9]Consideration of this issue could be avoided at this time since section 3320 concerns dishonors resulting from ''mistake or error'' and plaintiff has alleged a wilful, as well as negligent, dishonor. See *Jones* v. *Citizens Bank of Clovis* (1954) 58 N.M. 48 [265 P.2d 366] and *Woody* v. *National Bank of Rocky Mount* (1927) 194 N.C. 549 [140 S.E. 150, 154, 58 A.L.R. 725], holding similar or identical statutes inapplicable to suits for malicious dishonor of a check. It is, however, rather improbable that plaintiff will be able to prove a wilful or malicious dishonor, and thus uncertainty about the application of the section to a negligent dishonor may obstruct the resolution of the issue in the trial court or necessitate a subsequent appeal. For these reasons the matter will be considered in this opinion.

[10]Recently some states have abolished the distinction between traders and nontraders and applied the presumption of substantial damage to nontraders. (See *Valley Nat. Bank* v. *Witter* (1942) 58 Ariz. 491 [121 P.2d 414]; *Woody* v. *National Bank of Rocky Mount*, *supra*; *Johnson* v. *National Bank of South Carolina* (1948) 213 S.C. 458 [50 S.E.2d 177].)

*Valley Nat. Bank* v. *Witter* (1942) 58 Ariz. 491 [121 P.2d 414, 418]; 5A Michie, Banks & Banking, (Perm. ed., revd. 1950) §§ 241-246.) Injury to reputation, except to the extent that the depositor could prove a definite loss of business credit, and mental or emotional distress did not compose recoverable items of damage. (See 5A Michie, Banks & Banking, (Perm. ed., revd. 1950) § 244; but see *Westesen* v. *Olathe State Bank* (1924) 75 Colo. 340 [225 P. 837].)

The California courts followed these common-law rules (see *Siminoff* v. *Jas. H. Goodman & Co. Bank* (1912) 18 Cal.App. 5 [121 P. 939]; *Reeves* v. *First Nat. Bank* (1912) 20 Cal.App. 508 [129 P. 800]) until the *Hartford* case held that section 3302 of the Civil Code limited damages for wrongful dishonor to the amount of the check plus interest.[11]

Section 3320, enacted two years after *Hartford*, emanated from a uniform law drafted by the American Bankers Association and was incorporated in the law of seventeen states. The Association issued a statement justifying the statute upon the ground that plaintiffs suffered little or no damage in the majority of instances in which the common law presumed substantial damages, and that banks thus were being "mulcted in damages" out of proportion to the injury inflicted.[12]

---

[11]Section 3302 of the Civil Code provides: "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon." The section is part of the original Civil Code and was intended to codify a common-law rule of damages for breach of a contract to pay a liquidated sum. In *Siminoff* v. *Jas. H. Goodman & Co. Bank, supra,* the court after careful and extensive analysis concluded that section 3302 was not intended to abolish the common-law measure of damages for dishonor of a check. *Hartford,* in reaching the opposite conclusion, failed even to note the common-law rule or the California cases which had followed it, and did not discuss the strong arguments in its favor advanced in the *Siminoff* opinion. The *Hartford* holding on section 3302 no longer applies to the instant problem since section 3320 clearly constitutes "a legislative recognition that a depositor whose check is wrongfully dishonored may thereby sustain 'actual damage' beyond the amount of the check" (*Abramowitz* v. *Bank of America, supra,* at p. 897) and thus supersedes the *Hartford* holding on the measure of damages.

[12]The statement reads in part (taken from 1 Paton's Digest, p. 1117): "The . . . statute . . . is designed to correct the unjust rule established by the courts in many states to the effect that a bank, which refuses to pay the check of a customer who is a merchant or trader and who has sufficient funds on deposit, is liable to such drawer in an action for substantial damages, without proof of actual damage or any malice on the part of the bank. . . . The courts proceed on the theory that the dishonor of his check must necessarily result in material injury to such drawer and therefore hold that the law will conclusively presume such to be the fact without the necessity of any proof thereof. But the fact is often contrary to the presumption and probably in the majority of

Assuming the purpose of the statute to be the repeal of the common-law presumption of damages, such purpose would not be thwarted by recognition of compensatory damages for actual loss of reputation and impairment of health. The injury consequent upon arrest, arraignment, and imprisonment, although difficult to measure, is real enough. The purpose of the common law presumption was to permit substantial recovery although specific damages could not be shown due to the difficulty of proof. If a concomitant amelioration of the standards of specificity and proof does not accompany the repeal of the presumption, a statute designed to prevent injustice to banks will be carried beyond the point necessary to that end; it will, instead, inflict injustice upon the depositor.

The issue of whether a plaintiff's suffering which occurs incident to an arrest constitutes actual damage under the uniform law has been expressly decided in *Mouse* v. *Central Savings & Trust Co.* (1929) 120 Ohio St. 599 [167 N.E. 868].[13] In that case the court stated that: "[W]hen the Legislature enacted this section, it did not intend to deprive a depositor of the right of action in case of the nonpayment of his check through error or mistake, and without malice, but intended merely to eliminate speculative and punitive damages in the absence of malice on the part of the depositary. 'Actual damages' is a term synonymous with compensatory damages, and covers all loss recoverable as matter of right. . . ." Analyzing the nature of the damages, the court said: "What could be a more real and existing damage to a person of

instances where a customer's check is refused payment through error, the mistake is promptly corrected, an explanatory letter is written by the banker and no actual damage results to the customer. The application of the rule, therefore, works an injustice to the bank which is often mulcted in damages out of all proportion to the imaginary injury inflicted, not infrequently at the suit of a customer who has been in the habit of making overdrafts, but who in the particular instance has a small balance to his credit. . . ."

[13]Dictum in one California case (*Allen* v. *Bank of America* (1943) 58 Cal.App.2d 124, 131 [136 P.2d 345]) rejects recovery of damages for mental suffering, but dictum in two cases from other states with similar statutes (see *First Nat. Bank of Mobile* v. *Ducros* (1936) 27 Ala. App. 193 [168 So. 704]; *Woody* v. *National Bank of Rocky Mount* (1927) 194 N.C. 549 [140 S.E. 150, 58 A.L.R. 725]) indicates that only punitive or presumptive damages are excluded from recovery. *Meadows* v. *First Nat. Bank of Harlingen* (Tex. Civ. App. 1941) 149 S.W.2d 591, held that damages for mental suffering incident to the depositor's arrest were not recoverable as not constituting "actual damage," but since Texas has not enacted the American Bankers Association statute, the court's reference pertained only to the common-law standard of recovery.

good reputation than confinement in the county jail upon a charge concededly erroneous? Such damage is actual, so real, present, and existing, in fact, that the unlawful restraint by one person of the physical liberty of another gives rise to a cause of action all its own, namely, that of false arrest. We have little sympathy with the proposition that a genuine damage would be proved here if the bank's act had resulted in a damage to the plaintiff in his trade or occupation, but that the dishonor thrust upon him by this act of negligence has no existence in fact. . . ." (P. 871 [167 N.E.].)

Concurring with the analysis and conclusion of the Ohio Supreme Court in *Mouse,* we hold that loss of reputation and impairment of health caused by the arrest of a depositor may be recovered as actual damages under section 3320.

In brief, we see no reason for according to an institution so basic to the contemporary society as a bank a special non-statutory exemption from general tort liability. Such immunity would necessarily rest upon the outmoded concept that the chain of causation would break in this case because of the intervening, but foreseeable, act of a third party. We can no more adopt that unrealistic approach than we can grant the bank exoneration upon the similarly contrived ground that injury to reputation and impairment of health did not, within the meaning of section 3320 of the Civil Code, inflict "actual damage" upon plaintiff.

The judgment of the superior court is reversed and the case remanded with directions that defendant be permitted to answer within 10 days after the issuance of the remittitur.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and Peek, J., concurred.