UNITED STATES of America

v.

Steven Lawrence MOREHOUSE, Defendant.

No. CR–03–88–B–W.

United States District Court, D. Maine.

Nov. 22, 2004.

**4**

Gail Fisk Malone, Office of the U.S. Attorney, District of Maine, Bangor, ME, for USA, Plaintiff.

Bradford S. MacDonald, Macdonald & Dalton, P.A., Bangor, ME, for Steven Lawrence Morehouse (1), Defendant.

## PRE–SENTENCE ORDER

WOODCOCK, District Judge.

Defendant Steven Lawrence Morehouse contends that people wrongfully convicted of crimes he committed are, as a matter of law, not victims of his crimes. This Court disagrees.

## I. STATEMENT OF FACTS

Mr. Morehouse has been defrauding banks for decades.[1] He devised and repeatedly perpetrated a sophisticated scheme for securing personal identification information from unwitting strangers and then stealing from banks. A resident of New Hampshire, Mr. Morehouse would settle down in small towns from Maine to North Carolina and set up fictitious businesses. He would advertise for employees, and when people responded, he would extract personal identification information from them. He would proceed to open a series of checking accounts in the name of the fictitious business under the name of the unknowing job applicant, having fabricated false identification documents. Once one checking account was established, he would repeat the process in other communities with other victims and proceed to kite checks among the accounts. When the putative bank balance reached sufficiently high proportions (usually around $10,000.00), he would close the account, withdraw the cash, and vanish, only to re-emerge elsewhere and repeat the scheme.

He was remarkably successful. When Mr. Morehouse pleaded guilty to bank fraud on November 26, 2003, he admitted to stealing over $300,000.00 in over twenty-five separate incidents, beginning December 1980 and continuing through January 2003. Mr. Morehouse's criminal livelihood came to an end after an astute teller in Ellsworth, Maine recognized him as the same person who had defrauded the bank some ten years previous. At a presentence conference on April 29, 2004, this Court inquired as to whether there were any victims of Mr. Morehouse's crimes other than the banks. Noting he had stolen and misused other persons' identities, this Court asked the United States Attorney to determine whether any individuals had been harmed by Mr. Morehouse's schemes.

There were. The United States Attorney confirmed two individuals have been indicted, tried, convicted, sentenced, and served time for crimes Mr. Morehouse has

---

1. Mr. Morehouse asserted he suffers memory problems caused by a stroke and moved for a downward departure under U.S.S.G. §§ 5H1.1 and 5H1.4. On July 22, 2004, this Court issued an Order requiring Mr. Morehouse to undergo a pre-sentence study pursuant to 18 U.S.C. § 3552(b) to address issues of his mental competence and the nature of his medical and psychological condition. *United States v. Morehouse,* 326 F.Supp.2d 172 (D.Me.2004).

admitted committing. Mr. Morehouse's first admitted scheme took place on December 23, 1980 in Berlin, New Hampshire and Mexico, Maine. He made off with $14,000.00 from North Country Bank. After the crime, the police focused their investigation on Daniel Smith of Emporia, Kansas. Mr. Smith was a construction worker on temporary assignment to a crew in New Hampshire. While in New Hampshire, he banked at the North Country Bank in Berlin. After finishing his work detail, he returned to Kansas.

Mr. Morehouse's image was captured on bank surveillance videos, and bank documents containing his signature were seized by police. Despite having multiple alibi witnesses and evidence to prove he was in Kansas when the fraudulent transactions took place, Mr. Smith was arrested in Kansas, extradited to New Hampshire, and served four months in the Coos County jail awaiting trial. Although he professed his innocence throughout the court proceedings, he was convicted at trial and sentenced. Smith ultimately filed a federal law suit against the Berlin Police Department and others, alleging a wrongful conviction. In 1992, his civil suit was settled out of court. As a condition of the settlement, Mr. Smith's criminal record was expunged, and the defendants paid him $217,000.00 in civil damages. The United States Attorney proposes to present Mr. Smith's testimony at Mr. Morehouse's sentencing, stating that even though he sued the state successfully, he remains extremely angry about the way he was treated, has no faith in the system, and struggles to overcome the perception he is a criminal.

The Government's investigation also revealed that Donald Miller, formerly of New York and currently of California, was wrongfully convicted in Hancock County, Maine of a crime Mr. Morehouse committed in 1991. In September 1991, Mr. Morehouse defrauded Bar Harbor Bank & Trust and Union Trust in Ellsworth, Maine in the amount of $24,332.00. Images of Mr. Morehouse were captured on bank surveillance equipment, and bank documents containing his signature were seized.

Although Mr. Miller had no prior connection with Maine, he had prior convictions for writing bad checks and was identified through an old booking photograph as physically similar to the culprit. Although he professed his innocence throughout the court proceedings, he was convicted after a jury trial of four counts of aggravated negotiation of a worthless instrument and two counts of theft by deception. He was sentenced to three years in jail and served 194 days in Hancock County jail. Following his conviction, Mr. Miller filed a petition for post-conviction relief, alleging he had been wrongfully convicted. The petition remains pending. To this day, the District Attorney has been unwilling to concede the conviction was in error or take any measures to expunge his criminal record.

## II. DISCUSSION

Mr. Morehouse objects to this Court's consideration of the wrongful convictions of Messrs. Smith and Miller in determining his sentence. Mr. Morehouse acknowledges, under Application Note 1 of U.S.S.G. § 2B1.1, the banks are properly considered "victims" of his bank fraud; however, using the same definition, he urges this Court to conclude as a matter of law that a wrongfully convicted person does not fit within that definition. Further, citing U.S.S.G. § 1B1.3(a)(3), he contends the harm to these individuals did not result from his actions. According to Mr. Morehouse, any causation between his criminal acts and the later wrongful convictions is either too attenuated or broken

by independent causes, namely improper police investigations and prosecutions.

## A. *Blakely* Issue

In its Memorandum, the Government referred to Application Note 18 of U.S.S.G. § 2B1.1, which permits a court to depart upward if it determines the "primary objective of the offense was an aggravating, non-monetary objective" or if the offense "created a risk of substantial loss beyond the loss determined for purposes of subsection (b)(1)." U.S.S.G. § 2B1.1, Application Notes 18(A)(i), (ii), (iv).

■ Without addressing the merits of an upward departure, this Court determines it cannot upwardly depart under *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Blakely* requires any factor the "law makes essential to the punishment" be subject to indictment and proof beyond a reasonable doubt before a jury. *Blakely*, — U.S. at —, 124 S.Ct. at 2537 (quoting 1 J. Bishop, Criminal Procedure, § 87, at 55 (2d ed. 1872)). Mr. Morehouse has never been indicted, has never waived indictment, has never been convicted, and has never admitted to the facts surrounding the criminal convictions of Messrs. Smith and Miller.[2] To determine whether proximate causation exists between Mr. Morehouse's crimes and later convictions, this Court would have to engage in fact-finding pro-

hibited under its understanding of *Blakely*. The narrower issue is whether this Court can consider these wrongful convictions in determining the sentence within the guideline range established by facts that have been indicted, waived, and admitted.

## B. The Guidelines

■ This Court rejects Mr. Morehouse's argument that the Guidelines allow consideration of only a narrowly defined class of individuals as "victims" of bank fraud. It is true for purposes of applying a two to six level enhancement under § 2B1.1(b)(2)(A)-(C), this Court is limited to the definition of "victim" set forth in the Definitions in the Application Notes.[3] However, the Application Notes themselves later use the term "victim" in a broader sense. In Application Note 18(A)(ii), the Sentencing Commission notes an offense may have "caused or risked substantial non-monetary harm." U.S.S.G. § 2B1.1, Application Note 18(A)(ii). It goes on to state the offense may have caused "physical harm, *psychological harm, or severe emotional trauma or resulted in a substantial invasion of a privacy interest.*" *Id.* (emphasis added). Application Note 18(A)(vi) describes as victims individuals who have suffered harm to their "reputation or credit record, or . . . substantial inconvenience related to re-

---

**2.** *Blakely* seems to create an exception for "the fact of a prior conviction." *Blakely v. Washington*, — U.S. —, —, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). There is no reason to believe *Blakely 's* reference to "prior conviction" includes prior convictions of other individuals. Moreover, it is not the fact of these convictions that may make a sentencing difference. It is whether the convictions were for the offenses Mr. Morehouse admitted and whether the chain of

proximate cause has been broken between his commission of the offenses and the wrongful convictions. To make these determinations, this Court would be required to engage in fact-finding.

**3.** Application Note 1 contains the following definition of "victim": "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense." U.S.S.G. § 2B1.1, Application Note 1.

pairing the victim's reputation or a damaged credit record." U.S.S.G. § 2B1.1, Application Note 18(A)(vi). Other than in applying § 2B1.1(b)(2)(a)-(C), this Court concludes the Sentencing Commission did not intend to limit the definition of "victim" of bank fraud only to those persons who sustain an actual loss from the fraud or bodily injury during the commission of the crime.[4] This Court concludes, when a defendant pleads guilty to the crime of bank fraud, a person wrongfully convicted of the same crime is not precluded under the United States Sentencing Guidelines from being considered a victim of the crime.

## C. Proximate Cause

■ Under U.S.S.G. § 1B1.3, a sentencing court is empowered to consider the acts or omissions of the defendant and "all harm that resulted from the acts and omissions ... and all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(1)(A), (a)(3). Application Note 4 defines "harm" as "bodily injury, monetary loss, property damage, *and any resulting harm.*" U.S.S.G. § 1B1.3, Application Note 4 (emphasis added). Section 1B1.3(a)(3) does not restrict courts to consider only the harm the defendant intended. *See United States v. Mitchell*, 366 F.3d 376, 379 (5th Cir.2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 110, —— L.Ed.2d —— (2004)("[A] defendant is strictly liable for any injury a victim suffers as a result of his acts."). Although there is no "culpability requirement," there is a causation requirement. *See*

United States v. Hicks, 217 F.3d 1038, 1048–49 (9th Cir.2000), *cert. denied*, 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000); *United States v. Yeaman*, 194 F.3d 442, 457 (3d Cir.1999), *cert. denied*, 534 U.S. 1082, 122 S.Ct. 816, 151 L.Ed.2d 699 (2002); *United States v. Molina*, 106 F.3d 1118, 1124–25 (2d Cir.1997), *cert. denied*, 520 U.S. 1247, 117 S.Ct. 1859, 137 L.Ed.2d 1060 (1997). This has generally been interpreted to require the harm be "reasonably foreseeable."[5] *See United States v. Metzger*, 233 F.3d 1226, 1227 (10th Cir.2000)(citing § 1B1.3(a)(3) and approving a four-level enhancement where an off-duty police officer shot a bystander as the defendant attempted to flee a robbery); *Molina*, 106 F.3d at 1124–25 (upholding a § 2B3.1(b)(3)(B) enhancement because the shooting of a bystander by a security guard was "reasonably foreseeable" pursuant to § 1B1.3(a)(3)); *United States v. Fitzwater*, 896 F.2d 1009, 1012 (6th Cir.1990)(upholding bodily injury enhancement where the bank teller/victim hit her head and hip on her teller's drawer in the course of lying down on the floor during the robbery, despite the fact that the defendant was outside the bank in a getaway car when the victim sustained her injury, because it was reasonably foreseeable to the defendant that participation in concerted criminal conduct to rob a bank might result in the infliction of such an injury to a bank teller); *United States v. Walls*, 80 F.3d 238, 241–42 (7th Cir.1996)(upholding upward departure regardless of whether the defendant fired the fatal shot because his conduct of leading a group of armed

---

4. Furthermore, Congress has enacted a special provision to assure that victims of fraud or other intentionally deceptive practices be given notice of sentencing hearings. 18 U.S.C. § 3555.

5. Earlier this year, the Fifth Circuit concluded that "reasonable foreseeability" is not "a requirement for the imposition of an enhance-

ment under the sentencing guidelines." *United States v. Mitchell*, 366 F.3d 376, 379 (5th Cir.2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 110, —— L.Ed.2d —— (2004). *Mitchell* upheld an enhancement under § 2B3.1(b)(3)(C) for a stroke suffered by a customer during a bank robbery.

men to a third party's house in order to threaten him was "intentional or reckless" and the bystander's death was a foreseeable risk of the defendant's conduct).

There are at least two cases holding an innocent person's prosecution or conviction can be proximately caused by, and a foreseeable result of, the actual perpetrator's wrongful criminal conduct.[6] *See Purvis v. Hamwi,* 828 F.Supp. 1479 (D.Colo.1993)(malicious prosecution, intentional infliction of emotional distress, and negligence claims); *Seidel v. Greenberg,* 108 N.J.Super. 248, 260 A.2d 863; 876 (1969)(malicious prosecution claim). In *Purvis,* the court held that a person wrongly convicted of murder made a sufficient showing of proximate causation to state claims against the alleged actual perpetrator for malicious prosecution, intentional and negligent infliction of emotional distress, and negligence, because the actual perpetrator was the "but for" cause of prosecution and conviction, and prosecution and conviction were foreseeable results of the crimes.[7] *Purvis,* 828 F.Supp. at 1485. In *Seidel,* the plaintiff, who, although innocent, was subjected to criminal prosecution for a lumber yard fire caused by the defendants. *Seidel,* 260 A.2d at

876. The court ruled the defendants were liable to the plaintiff because his wrongful prosecution was proximately caused by the wrongful criminal acts of the defendants and awarded the plaintiff damages for his shame, humiliation, embarrassment, mental distress, marred reputation, mental anguish, physical suffering, and legal expenses. *Id.* at 876–77.

■ Here, the Government and Mr. Morehouse disagree whether a third party's wrongful conviction was a foreseeable risk of his crimes. Without foreclosing the presentation of evidence at sentencing, this Court concludes there is a sufficient factual basis for concluding proximate causation has been established between Mr. Morehouse's crimes and these wrongful convictions.[8] Mr. Morehouse's scheme is somewhat unique in that he went to elaborate lengths to hide his true identity and to assume other people's identity. If his scheme worked as he planned, authorities would be led down numerous blind alleys during their investigation. They would seek out the individual whose identity he had stolen. If that person by coincidence looked like Mr. Morehouse, he could well have been subject to criminal charges, and even if he did not, he would be under

---

6. Section 4–402 of the Uniform Commercial Code makes a payor bank liable to its customer for "damages proximately caused by the wrongful dishonor of an item." U.C.C. § 4–402; *see also* 11 M.R.S.A. § 4–402(2). Damages "may include damages for an arrest or prosecution of the customer." *Id.; see also Weaver v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 59 Cal.2d 428, 30 Cal.Rptr. 4, 380 P.2d 644 (1963).

7. In *Purvis v. Hamwi,* the actual person who hired the killing was the ex-husband of the victim, and he testified falsely in the trial of the innocent accused. *Purvis v. Hamwi,* 828 F.Supp. 1479, 1480–81 (D.Colo.1993). There is nothing to indicate Mr. Morehouse was involved with either prosecution; however, the Smith prosecution took place in Coos

County, New Hampshire. It is at least possible Mr. Morehouse, who resided in Manchester, was aware of the prosecution. It is also possible he was aware of the Maine prosecution of Miller. He certainly returned with some regularity to Maine, as his documented history confirms.

8. In an analogous context, the Restatement gives the following illustration of unintended consequences of intentional invasions: "A intentionally hits B on the head. B is taken to the hospital where, by a gross and not expectable error, a nurse gives him a poison instead of a medicine, as a result of which he is seriously harmed. It may be found that A is liable for the harm caused by the poison." Restatement (Second) of Torts § 435B cmt. a, illus. 1 (1965).

suspicion as an accomplice. The police were also bound to explore the "usual suspects," individuals, like Mr. Miller, with a prior record of similar crimes and bearing a physical resemblance to Mr. Morehouse. In this Court's view, Mr. Morehouse's scheme, including the use of false identities, the focus on rural communities where he was unknown, his evaporation from the area of the crime, and the regular repetition could make it "reasonably foreseeable" someone else, wholly innocent, would be charged and perhaps convicted of his crimes.[9]

## III. CONCLUSION

The Government will not be prohibited from presenting evidence at Mr. Morehouse's sentencing hearing from the two individuals wrongfully convicted of his crimes. The Defendant will have the right, though not the obligation, to respond. This Court will issue a final ruling, based on the evidence presented at the sentencing hearing.

SO ORDERED.

---

9. This does not prevent Mr. Morehouse from arguing that the evidence at the sentencing hearing breaks the chain of causation. In the Smith case, given the federal lawsuit, there is at least an implication the Berlin Police Department and perhaps others were separately culpable. Other than the fact of his wrongful conviction, this Court is unaware what prompted the lawsuit and whether the actions of the police and others constitute separate and independent causes.