**UNITED STATES of America**

v.

**Steven Lawrence MOREHOUSE**

No. CR–03–88–B–W.

United States District Court,
D. Maine.

July 22, 2004.

Bradford S. MacDonald, Bangor, ME, for Steven Morehouse.

Gail Fisk Malone, Office of the U.S. Attorney District of Maine, Bangor, For U.S.

### ORDER REQUIRING BUREAU OF PRISONS TO CONDUCT EVALUATION PRIOR TO SENTENCING

WOODCOCK, District Judge.

Steven Lawrence Morehouse has been defrauding banks for decades. He devised and repeatedly perpetrated a sophisticated scheme for securing personal identification information from unwitting strangers and then stealing from banks. Mr. Morehouse would set down in small towns from Maine to North Carolina and would set up a fictitious business. He would then advertise for employees and when individuals responded, he would extract personal identification information from them. He would proceed to open up a series of checking accounts in the name of the fictitious business using false ids. Once the

checking account was established in one community, he would duplicate the scheme in other communities and proceed to kite checks among the bank accounts. When the putative bank balance reached sufficiently high proportions, he would withdraw the entire balance and disappear, only to re-emerge elsewhere and repeat the scheme.

Mr. Morehouse was remarkably successful; he has pleaded guilty to absconding with a total of over $360,000.00, since December 1980. Mr. Morehouse's criminal livelihood came to an end after an astute bank teller in Ellsworth, Maine recognized him as the same person who had defrauded the same bank some ten years ago. Having now pleaded guilty, Mr. Morehouse has posited his current mental and physical condition as a mitigating factor in this Court's imposition of sentence. To obtain objective clarification of the issues Mr. Morehouse has raised, the Court hereby ORDERS that Defendant undergo a pre-sentence evaluation, pursuant to 18 U.S.C. § 3552(b).

The issue of Defendant's current level of cognitive functioning, and the presence or absence of memory problems, has been raised before the Court in two fashions. First, the U.S. Probation Office has recommended, in the Presentence Investigation Report, that Defendant's sentence not be reduced for acceptance of responsibility. It bases its recommendation on its conclusion that Defendant was uncooperative with its attempts to conduct a presentence interview and was deliberately obtuse in his responses to questions when he finally appeared. Defendant has objected to this recommendation, arguing that his behavior, lack of recall and missed appointments resulted from memory problems caused by a stroke he suffered in 2002.

Second, Defendant has moved for a downward departure under U.S.S.G.

§ 5H1.1. He argues that he is elderly and infirm and that an alternate form of punishment would be equally efficient and less expensive than incarceration. He bases his claim of infirmity in large part on cognitive deficits and memory problems. He has submitted numerous medical records in support of this motion. The Government has objected to a downward departure.

After considering the briefs and medical records, the Court concludes that it desires more information than is currently available to it as a basis for determining the sentence to be imposed on Defendant. In particular, the Court cannot determine whether the Defendant's physicians' opinions are objective, scientific assessments or reflections of patient advocacy. Mr. Morehouse sustained a stroke on February 17, 2002 and was admitted to the Catholic Medical Center from February 17 through February 20, 2002. By March 19, 2002, Dr. Jerry Blaine, his treating internist, noted the following: "This patient is a 65 year old male with new atrial fibrillation, hypertension, and *a mild embolic stroke without sequelae.*" (emphasis supplied). Dr. Blaine, who had been his treating physician for years, continued to treat Mr. Morehouse from March 19, 2002 to date. Although Dr. Blaine saw Mr. Morehouse on June 24, 2002, October 3, 2002, December 16, 2002, and December 26, 2002, his notes make no mention of any memory problems. The first mention of memory issues in Dr. Blaine's notes occurs on March 27, 2003, when Mr. Morehouse complained to Dr. Blaine that "his memory is not quite the same since the TIA. He wonders if he had some damage done as a result of that." Mr. Morehouse had been indicted on February 12, 2003, arrested on February 19, 2003, and bailed on the same day. On February 28, 2003, he had ap-

peared in this Court, entered a not guilty plea, and had been admitted to bail.

The presentence report states that Mr. Morehouse engaged in his fraudulent scheme after the February 17, 2002 stroke. On March 9, 2002, he initiated a scheme in Damariscotta, Maine, securing personal identification information from a Bar Harbor, Maine resident and on March 14, 2002, he sought to complete a scheme in Ellsworth, Maine involving the use of the personal identification information involving a Lincoln, Maine resident. Mr. Morehouse was initially stopped by police on March 14, 2002, but was released on March 15, 2002. In October, 2002 through January, 2003, Mr. Morehouse posed as another individual under a fictitious company name and opened an account in one bank, and then posed as another individual under another fictitious company name and opened another account in another bank. Between October 4, 2002 and January 24, 2003, he kited checks between the two accounts and caused losses in excess of $18,000 to the two banks.

Dr. Jerry Blaine has expressed the professional view that "Mr. Morehouse's memory problems ... came about as a result of his stroke." He has also stated that his medical condition prevents him from being placed "under any type of pressure, as this could easily lead to serious health problems or even recurrence of the stroke he suffered in February, 2002." Dr. Blaine has advised Mr. Morehouse not to "subject himself to a session of several hours of intense questioning."

The Court is unable to reconcile Dr. Blaine's medical opinions with the other evidence before it. The Court therefore ORDERS that a study be conducted pursuant to 18 U.S.C. § 3552(b) to evaluate Defendant's medical and psychological condition and prognosis and the availability of treatment, as set forth more fully below.

Pursuant to 18 U.S.C. § 3552(b), the Court finds there is a compelling reason for the study to be done by the Bureau of Prisons and a federal medical center, because of (1) the need for a global, objective assessment of Defendant's medical and psychological conditions and prognosis; and, (2) the need for the examining physician(s) to be knowledgeable of the treatment options available within the Bureau of Prisons, and the relative cost of alternative forms of punishment.

**SCOPE**

The Court ORDERS that the Bureau of Prisons conduct a comprehensive evaluation of the Defendant to determine his current medical and psychological condition. The Court requests this evaluation include not only physical and psychological examination and testing, but also review of all historical medical and psychological records provided by the parties. The Court specifically requests the evaluation address Defendant's current level of cognitive functioning, with special emphasis on memory loss, if any, in addition to any other disease, condition or illness detected during the evaluation.

Pursuant to 18 U.S.C. § 3552(b), this Court further ORDERS the Bureau of Prisons and its professional consultants to study any additional matters the Bureau of Prisons or its professional consultants believe are pertinent to the factors set forth in 18 U.S.C. § 3553(a), including: (1) the nature and circumstances of the offense and the history and characteristics of the Defendant; (2) the need for the sentence to protect the public from further crimes of the Defendant; and, (3) to provide the Defendant with needed medical care or other correctional treatment in the most effective manner.

**REPORT**

The Court ORDERS that upon conclusion of its evaluation and review of Defen-

dant and his medical records, the Bureau of Prisons submit to the Court a report setting forth the results of the evaluation and addressing the following topics and any other matters that the Bureau of Prisons or the professional consultants believe are pertinent:

1. The clinical diagnosis for each medical or psychological condition, illness or disease detected during the evaluation;

2. If the evaluation reveals that Defendant is suffering from cognitive impairment or memory loss:

   a. the extent of that impairment or memory loss;

   b. the date of onset;

   c. the explanation, if any, for delayed onset;

   d. the likely cause or causes, including secondary motive, if applicable;

   e. the prognosis, including whether the impairment or memory loss is likely to be progressive, and if so, why; and,

   f. whether Defendant's medical and psychological records, or records relating to his criminal conduct or conduct throughout the pendency of court proceedings, reveal behavior that is inconsistent with a finding of cognitive impairment or memory loss.

3. Defendant's prognosis as to each diagnosis, and his prognosis considering his condition as a whole;

4. whether treatment for each of the diagnoses is available at a Bureau of Prisons facility, and if so, which facility or facilities; and,

5. whether, given his current condition and prognosis, an alternative form of punishment, such as home confinement, would be equally efficient as and less costly than incarceration of Defendant.

The Bureau of Prisons or the professional consultants shall provide the Court with a written report of the pertinent results of the study and make to the Court whatever recommendations the Bureau or the consultants believe will be helpful to a proper resolution of the case. The report shall include recommendations of the Bureau or its consultants concerning the guidelines and policy statements, promulgated by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a), that they believe are applicable to the Defendant's case, including specifically §§ 5H1.1 and 5H1.4, if applicable

Counsel for Defendant is instructed to provide all available medical records to the Bureau of Prisons facility designated to conduct the evaluation, along with a chronological history of treatment events.

Pursuant to 18 U.S.C. § 3552(b), the evaluation shall be completed and the report submitted to the Court within 60 days. For good cause shown, the Bureau of Prisons may request that the Court extend the period for the study and report by an additional 60 days.

This order shall be treated for administrative purposes as a provisional sentence of 30 years imprisonment, the maximum term of imprisonment authorized by 18 U.S.C. § 3581(b) for the offense committed. When the evaluation is complete, the United States Marshal shall return Defendant to the Court for final sentencing.

SO ORDERED.